## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| I, MAN, ASARKASAAMSU RAASAR RA II KARAPERNUNTU HERISHETAPAHERU AS PROSECUTOR: FOR MAN f/k/a CARL F. CHRISTOPHER AND FOR WOMAN CHENZIRA KAHINA FAMILY, <br><br> Plaintiffs, <br><br> v. <br><br> FIRSTBANK PUERTO RICO, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) Civil Action No. 2016-0057 ) ) ) ) ) ) |

**Appearances:**
**Asarkasaamsu Herishetapaheru,** *Pro Se*
**Chenzira D. Kahina,** *Pro Se*
St. Croix, U.S.V.I.

**Warren B. Cole, Esq.,**
**Elise Catera, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant*

## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Motion for Summary Judgment on First Amended Complaint" (Dkt. No. 105) filed by Defendant FirstBank Puerto Rico ("FirstBank"). In its Motion, FirstBank seeks judgment on all claims brought against it by Asarkasaamsu Herishetapaheru ("Herishetapaheru")[1] and Chenzira D. Kahina ("Kahina"), husband and wife (collectively "Plaintiffs"). *Id.*

---

[1] This Memorandum Opinion will refer to Herishetapaheru, formerly known as Carl Christopher, as "Herishetapaheru," including for events that occurred when he was known as Carl Christopher.

Also before the Court are Plaintiffs' two filings titled "Motion for Relief from Judgement for Fraud on the Court" (Dkt. Nos. 115 and 117);[2] Plaintiffs' "Motion for Proposed Second Amended Mixed Action Claim as Complaint in Equity and Common Law" (Dkt. No. 114); and Plaintiffs' "Motion to Disqualify Defendant Attorneys as Sole Advocate-Witness." (Dkt. No. 126). Many of the issues raised in these Motions relate to a prior mortgage foreclosure proceeding in this Court, *FirstBank Puerto Rico v. Carl Christopher a/k/a Asarkasaamsu Herishetapaheru and Chenzira D. Kahina (his wife)*, Case No. 2013-cv-0093. ("*Christopher I*").

For the reasons discussed below, the Court will grant FirstBank's Motion for Summary Judgment on the Amended Complaint (Dkt. No. 105); deny Plaintiffs' Motions for Relief from Judgment (Dkt. Nos. 115, 117); deny Plaintiffs' Second Motion to Amend the Complaint (Dkt. No. 114); and deny Plaintiffs' Motion to Disqualify Defendant's Attorneys (Dkt. No. 126). Because these rulings resolve all the issues before the Court, the Court will also dismiss Plaintiffs' Amended Complaint with prejudice.

## I.    BACKGROUND

On August 17, 2016, Plaintiffs, appearing *pro se*, filed a Complaint asserting claims against FirstBank. (Dkt. No. 1 at 1). They attached a nineteen page "Affidavit"[3] referring to claims for forfeiture, permanent injunction, enforcement of default judgment, and for "Any and All Damages." (Dkt. No. 1-2).

Plaintiffs' claims are related to an earlier proceeding in this Court, "*Christopher I*", in which FirstBank filed an action against Herishetapaheru and Kahina seeking to enforce a Promissory Note and to foreclose on a Mortgage encumbering property described as:

---

[2]  The two docket numbers contain motions that are substantively identical.

[3]  Neither this "Affidavit" nor any others filed by Plaintiffs are sworn under penalty of perjury as required by 28 U.S.C. § 1746.

> Plot No. 176-C of United 21 Subdivision of The Whim Estates, West End Quarter,
> St. Croix, U.S. Virgin Islands, consisting of 1.077 U.S. acres, more or less, as more
> fully shown on PWD No. 594 dated June 5, 1957.

("Whim Estates property"). In *Christopher I,* this Court granted FirstBank's Motion for Summary

Judgment in February 2015 and issued a Writ of Execution in April 2015. (*Christopher I*, Dkt.

Nos. 84-85, 102). The Court confirmed the Marshal's Sale of the Whim Estates property in

December 2015 over Plaintiffs' objections. (*Christopher I*, Dkt. No. 154). In December 2016, the

Court issued a Writ of Assistance when Plaintiffs refused to voluntarily vacate the property after

their redemption period had expired. (*Christopher I*, Dkt. No. 193).

After the Marshal's Sale in *Christopher I*, Plaintiffs filed this action against FirstBank.

Plaintiffs' pleading sought to enforce a "default judgment" and "consent agreement for forfeiture

and damages." The "judgment" claimed by Plaintiffs allegedly resulted from FirstBank's failure

to properly respond to a request made by Plaintiffs for information under the Real Estate

Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq*. ("RESPA"). (Dkt. No. 1-2 at 6). Plaintiffs

also asserted that the Judgment in *Christopher I* should be set aside. *Id.* at 2-3, 6-13.

FirstBank filed a Motion for Summary Judgment on Plaintiffs' Complaint. (Dkt. No. 24).

Before FirstBank's Motion was resolved, the Magistrate Judge granted a motion by Plaintiffs to

file an Amended Complaint,[4] but ordered that the Amended Complaint conform to various

---

[4] After FirstBank's summary judgment motion was filed, Plaintiffs filed various "notices" and
motions demanding that the Magistrate Judge hold an evidentiary hearing regarding their RESPA
claims and reasserting the various allegations in the Complaint. (Dkt. Nos. 25 at 1-2; 32 at 2). They
also filed several motions seeking to amend their Complaint as well as multiple memoranda in
support of the motions to amend. (Dkt. Nos. 59; 61-72; 77-79; 81). When the Magistrate Judge
denied almost all of the motions, Plaintiffs filed objections to the Magistrate Judge's rulings. (Dkt.
Nos. 76; 84-85). Those Objections were overruled in a separate Order of the Court. (Dkt. No. 130).

standards set out in the Order. (Dkt. No. 89).[5] Because Plaintiffs had amended their claims, the Court denied FirstBank's Motion for Summary Judgment as moot. (Dkt. No. 103).

In their amended "Mixed Action" pleading ("Amended Complaint"), Plaintiffs reasserted the claims discussed above. (Dkt. No. 90-1). In the pleading—which includes symbols similar to Egyptian hieroglyphics and detailed descriptions of Plaintiffs' heritage—Plaintiffs allege that FirstBank failed to appear *at a trial* to prove its claims in *Christopher I*. As a result, Plaintiffs claim that FirstBank and the Court unconstitutionally denied them their right to a jury trial. *Id.* at §3, §6. They also claim that FirstBank: (1) presented fraudulent and forged documents in *Christopher I*; (2) failed to prove it was the holder of the Note in the earlier case; (3) committed fraud on the Court in *Christopher I*; (4) failed to prove it provided "lawful consideration" for the mortgage agreement; and (5) defamed them. *Id.* Further, Plaintiffs assert that FirstBank failed to respond adequately to a "RESPA Request" they sent while *Christopher I* was pending. Plaintiffs claim that FirstBank's inadequate RESPA response effectively constituted an acquiescence by FirstBank to a default judgment against it and granted to Plaintiffs an Irrevocable Power of Attorney over the Bank's assets. *Id.* at §§ 3, 4.[6] Plaintiffs seek damages in the amount of $190,000,000. *Id.* at § 7.

---

[5] Plaintiffs' "Amended Mixed Claims" pleading did not comply with the Magistrate Judge's Order. (Dkt. No. 90). Plaintiffs objected to the Order, emphasizing that they were bringing their claims under "Common Law" with the "right of trial by jury," and asserted that the Federal Rules of Civil Procedure and local District Court rules did not apply as they were "not mentioned in the Constitution." *Id.* That Objection was addressed and overruled in a prior Order of the Court. (Dkt. No. 130).

[6] In apparent efforts to enforce their alleged "consent judgment" and Power of Attorney, Plaintiffs filed a UCC-1 form with the Lt. Governor of the Virgin Islands and filed or attempted to file Notices of Liens with local Recorders of Deeds against various Bank properties located on St. Croix and St. Thomas, including the Whim Estates property. This has led to a third case, *First Bancorp, et al. v. Herishetapaheru, et al.*, Case No. 2016-cv-0060 (*Christopher III*), in which FirstBank and its parent corporation, First Bancorp, obtained a preliminary injunction enjoining

FirstBank filed the instant Motion for Summary Judgment on the Amended Complaint. (Dkt. No. 105-1 at 1-2). In its Statement of Undisputed Facts, FirstBank asserts that in 2013, Plaintiffs demanded information from FirstBank regarding their mortgage loan. FirstBank asserts that in response, it provided Plaintiffs with copies of the entire loan file. Plaintiffs then sent a document labeled "qualified written request" dated December 2013 referring to RESPA, which demanded proof of FirstBank's ownership of the loan, among numerous other requests for information. (Dkt. Nos. 105-2 at ¶¶ 1-5; 105-1 at 6-7). FirstBank avers that it provided additional documents to Plaintiffs six days after receipt of the letter though a Rule 26(a) disclosure. FirstBank further avers that it provided Plaintiffs with all of the documents that RESPA requires it to provide. (Dkt. Nos. 105-2 at ¶¶ 7-10; 105-1 at 5-8). FirstBank further states that Plaintiffs failed to allege any damages arising from the claimed statutory violation. (Dkt. No. 105-1 at 6-7).[7]

With respect to Plaintiffs' other claims, FirstBank argues that Plaintiffs failed to plead their claim of fraud with particularity and did not present any facts that would establish the elements of fraud. (Dkt. No. 105-1 at 9-10). FirstBank further asserts that it is entitled to absolute immunity on Plaintiffs' defamation claims because the statements at issue were made in pleadings to the Court during litigation. (Dkt. No. 105-1 at 6-7). Finally, FirstBank argues that all of Plaintiffs' claims asserted in the present case were or could have been raised in *Christopher I*. Therefore,

---

Plaintiffs from filing or recording any liens against FirstBank's properties. (*Christopher III*, Dkt. No. 37).

[7] FirstBank describes Plaintiffs' damage calculations as "simply add[ing] up the face amounts of the mortgage loan and subsequent modifications of it, [(]which replaced the original and did not supplement it) along with any down payment made by [Herishetapaheru] and multiplied by a random number." (Dkt. No. 105-1 at 7-8). These calculations, FirstBank asserts, are not rational nor related to how Plaintiffs' loan was serviced. This is an apt description of Plaintiffs' $190,000,000 damage claim.

FirstBank contends that Plaintiffs are precluded from reasserting these claims based on the doctrines of collateral estoppel and res judicata. (Dkt. Nos. 105-1 at 8-9; 105-2 at ¶¶ 15-16).

## II.   APPLICABLE LEGAL PRINCIPLES

### A.   Summary Judgment Standards

A district court can grant summary judgment only if the relevant documents—including pleadings, depositions, interrogatory answers, admissions and any affidavits or declarations— "show there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Bonkowski v. Oberg Indus.*, 787 F.3d 190, 195 n.1 (3d Cir. 2015). "Only disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Stiegel v. Peters Twp.*, 600 F. App'x 60, 63 (3d Cir. 2014). In that regard, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 250.

When reviewing a motion for summary judgment, the facts and the inferences to be drawn from the motion and accompanying evidence must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Seamans v. Temple Univ.*, 744 F.3d 853, 859 (3d Cir. 2014) (citations omitted). The moving party has the initial burden of coming forward with evidence which demonstrates the absence of a genuine issue of material fact. *Matsushita Elec.*, 475 U.S. at 587.

If the moving party has met this initial burden, the party opposing summary judgment must offer specific facts contradicting those averred by the movant to establish that a genuine issue of material fact exists. *Savage v. Pennsylvania Turnpike Comm'n*, 2018 WL 2670037, at *14 (E.D.

Pa. June 1, 2018) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). The non-moving party cannot rely merely upon bare assertions, conclusory allegations, or suspicions to avoid summary judgment. *Matsushita*, 475 U.S. at 586.

*Pro se* litigants are "held to 'less stringent standards' than trained counsel." *Benckini v. Hawk*, 654 F. Supp. 2d 310, 316 n.1 (E.D. Pa. 2009) (*quoting Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, when responding to a summary judgment motion, *pro se* parties still are responsible for pointing to competent evidence in the record that is capable of refuting the opposing party's motion. *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017). A *pro se* party cannot avoid summary judgment based upon "bald assertions" unaccompanied by evidentiary support. *Whitenight v. Elbel*, 2019 WL 6828653, at *2 (W.D. Pa. Dec. 13, 2019); *see also Zilich v. Lucht*, 981 F.2d 694, 696 (3d Cir. 1992) (*pro se* plaintiff "has before him the formidable task of avoiding summary judgment by producing evidence 'such that a reasonable jury could return a verdict for [him].'")

### B.     Motions for Relief from Judgment Under Rule 60(b)

Plaintiffs' motions for relief from judgment seek to set aside the prior foreclosure judgment pursuant to Fed. R. Civ. P. 60(b). A motion pursuant to Rule 60(b) "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." *United States v. Mishra*, 784 F. App'x 53, 53 (3d Cir. 2019). Rule 60(d) also permits the Court to grant the same type of relief in "an independent action." However, Rule 60(b) motions are narrowly construed, and the moving party must show "extraordinary circumstances" justifying the reopening of a final judgment. *Rogers v. Director Internal Revenue Bureau*, 2019 WL 1772431, at *2 (D.V.I. April 23, 2019) (citing *Budget Blinds, Inc. v. Whit*e, 536 F.3d 244, 255 (3d Cir. 2008)). Extraordinary circumstances do not exist

"when a party seeks relief from a judgment that resulted from the party's deliberate choices." *Budget Blinds*, 536 F.3d at 255.

The general purpose of Rule 60 is to balance the "conflicting principles that litigation must be brought to an end and that justice must be done." *Ross v. Meyer*, 741 F. App'x 56, 61 (3d Cir. 2018). The decision to grant or deny relief under Rule 60(b) is guided by accepted legal principles applied in light of all relevant circumstances. *Kilkeary v. United States Government*, 2018 WL 6003543, at *1 (D.N.J. Nov. 15, 2018). A Rule 60(b) motion "may not be used as a substitute for appeal, and . . . legal error, without more does not warrant relief under that provision." *Jaye v. Oak Knoll Village Condo. Ass'n, Inc.*, 782 F. App'x 197, 200 (3d Cir. 2019) (citations omitted).

To be entitled to relief under Rule 60(b)(3)—"fraud . . . , misrepresentation, or misconduct by an opposing party"—the party seeking relief must show by clear and convincing evidence that the judgment was obtained through fraud, misrepresentation, or misconduct which prevented the movant from fully presenting his case. *Jayasundera v. Macy's Inc.*, 731 F. App'x 133, 136 (3d Cir. 2018). Relief under Rule 60(b)(3) may be granted only where "*the judgment* was obtained by fraud." *In re Lampman*, 494 B.R. 218, 223 (M.D. Pa. 2013) (emphasis added). It does not apply to general claims of fraud not directly related to the judgment itself. *Id.*

## III.    DISCUSSION

### A.    Seventh Amendment Trial by Jury

Throughout their written submissions, Plaintiffs repeatedly assert that the Judgment in *Christopher I* and FirstBank's filings in this case are inconsistent with their right to a jury trial "according[] to the rules of the common law." U.S. Const., amend. VII. The Court is mindful of Plaintiffs' desire for their day "in court." Nonetheless, summary judgment is a legitimate tool when it is shown there is no genuine issue of fact for a jury to decide. *Winston v. Bank of Nova Scotia*,

8

722 F. App'x 138, 141 (3d Cir. 2018). Indeed, in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the United States Supreme Court confirmed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Id.* at 327. An Order granting summary judgment, when Rule 56 standards are met, does not violate the Seventh Amendment. *See In re TMI Litig.*, 193 F.3d 613, 725 (3d Cir. 1999). Accordingly, because the Court finds—as discussed below—that summary judgment is appropriate under the circumstances here, Plaintiffs' claimed right to a jury trial is rejected.

### B.   FirstBank's Summary Judgment Motion

FirstBank contends it is entitled to summary judgment on Plaintiffs' various forgery and fraud claims because: (1) Plaintiffs have not pleaded fraud with particularity; and (2) Plaintiffs have failed to prove facts to show they were defrauded or that fraud was committed on the Court. (Dkt. No. 105-1 at 8-9).

Pursuant to Rule 9(b), when "alleging fraud or mistake, a party must *state with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Allegations of fraud must be supported by factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016).

In this case, as in *Christopher I*, Plaintiffs failed to respond to FirstBank's Statement of Undisputed Facts (Dkt. No. 105-2) in a manner consistent with LRCi 56.1(b). Rather than responding directly to the factual assertions of FirstBank, Plaintiffs filed their motions to amend and for relief from judgment, and accompanying memoranda reiterating the allegations set forth in their pleadings. (Dkt. Nos. 114-115, 117-118). Because Plaintiffs failed to respond directly to FirstBank's Undisputed Facts and the Court is unable to discern any evidentiary facts that

undermine those presented by FirstBank, the Court will deem the Statement of Undisputed Facts as true—excluding those portions of the facts that draw legal conclusions.[8] *See Brown v. May*, 2019 WL 5445923, at *3 (E.D. Pa. Oct. 23, 2019) (portions of defendants' Statement of Material Facts that contain legal conclusions need not be accepted, even if plaintiff did not respond as required by the rules)); *see also Ashton v. Whitman*, 94 F. App'x 896, 902 (3d Cir. 2004) (legal conclusion contained in deposition testimony could not create a genuine dispute over whether documents were exculpatory or material).

### 1. Alleged Forgery and Fraud

Throughout their Amended Complaint (Dkt. No. 90-1), Plaintiffs make broad assertions that FirstBank used forged instruments to obtain the judgment in *Christopher I.* (Dkt. Nos. 25 at 1; 28 at 3; 32-2; 90-1). The Court notes, however, that the allegations of "forgery" in the present case were not raised in *Christopher I*, and indeed, are inconsistent with Plaintiffs' pleadings in the earlier case. In *Christopher I*, FirstBank alleged that: (1) Herishetapaheru executed various promissory notes to the Virgin Islands Community Bank ("VICB")[9] and FirstBank; (2) both Herishetapaheru and Kahina executed various mortgages securing the Notes with the Whim Estates property; and (3) the successive notes and mortgages were executed in 2006 with VICB and in 2009 and 2012 with FirstBank. (*Christopher I*, Dkt. No. 1 at ¶¶ 5-9). Copies of the Notes

---

[8] For example, FirstBank asserts that documents it provided to Plaintiffs in response to their QWR in *Christopher I*, "address[ed] all the legitimate and coherent demands for information made" in the QWR. (Dkt. No. 105-2, at ¶ 10). FirstBank's "factual" statement that it properly addressed Plaintiffs' RESPA inquiries is a legal conclusion which this Court will not accept as undisputed.

[9] According to certified records presented to Plaintiff and the Court, FirstBank Acquisition Corp. merged with VICB in 2008, with the surviving corporation known as FirstBank Acquisition Corp. This corporation then merged into FirstBank Puerto Rico later in 2008. (*Christopher I*, Dkt. Nos. 1-3; 43-1).

and Mortgages were attached to the Complaint in *Christopher I*. (*Christopher I*, Dkt. Nos. 1-1 to 1-6).

In their Answer in *Christopher I*, the current Plaintiffs[10] admitted all of these allegations with two general caveats. (*Christopher I*, Dkt. No. 12). First, they asserted that they did not receive a copy of the VICB-FirstBank merger documents when they executed the post-2006 loan documents with FirstBank. Second, and primarily, the current Plaintiffs asserted that FirstBank did not "disclose how the debt funds were generated and originated." (*Christopher I*, Dkt. Nos. 12 at ¶¶ 5-9; 84, at 9-10). The current Plaintiffs did not claim that their signatures were forged on any of the documents or that any of those documents had been altered. The challenge that the current Plaintiffs raised in *Christopher I* was that FirstBank failed to disclose where it obtained the monies it used to fund their loans. The current Plaintiffs' defense theory in *Christopher I* was premised on their apparent belief that if FirstBank did not fund their loans from its own assets, as opposed to financing from the Federal Reserve or another source, FirstBank lacked standing to enforce the Notes. *Id*. at 6-7.[11]

The Court rejected the current Plaintiffs' defenses and granted summary judgment for FirstBank in the earlier case, finding that FirstBank's possession of the Note established its status

---

[10] The Court refers to Plaintiffs herein as "the current Plaintiffs" in the context of the *Christopher I* discussion because in the *Christopher I* foreclosure proceeding, the Plaintiffs herein were the defendants.

[11] This theory also was the focus of the current Plaintiffs' Motion for More Definite Statement in Response to FirstBank's answers to interrogatories, in which they critiqued FirstBank's responses. (*Christopher I*, Dkt. Nos. 53 at 5; 57-3 at 7). The Magistrate Judge treated the motion as a Motion to Compel and denied their request for relief. (*Christopher I*, Dkt. No. 59). Plaintiffs also asserted that the banking system and Federal Reserve—to which FirstBank belonged—were corrupt and that courts should protect individuals from the banking system's "manipulations" of the economy. (*Christopher I*, Dkt. No. 12 at 7-9).

as a "holder" in a foreclosure proceeding. (*Christopher I*, Dkt. No. 84 at 10-12). *See, e.g., Wells Fargo Bank, N.A. v. MMDG L.P.*, 354 F. Supp. 3d 671, 677 (W.D. Pa. 2018). Nearly a year elapsed in *Christopher 1* between the filing of FirstBank's Summary Judgment Motion and the date the Court granted that Motion.[12] Having been provided copies of all the Notes and Mortgages in the case, Plaintiffs had more than ample opportunity to assert their forgery claims in that case, but did not do so.[13] Plaintiffs' failure, even now, to identify any alleged forged documents highlights the insufficiency of their claim.

Moreover, any alleged fraud based on Plaintiffs' misguided theory relating to FirstBank's funding source would not be relevant to the legal issues underlying the Court's rulings in the *Christopher I* foreclosure matter. *See Bright v. First Sr. Fin. Grp.*, 2013 WL 3196392, at *3 (E.D. Pa. June 24, 2013) (Even if the movant proves fraudulent statements were made, relief under Rule 60(b)(3) is proper only if that fraud was material to the outcome of the case). Thus, for the foregoing reasons, Plaintiffs' claims of fraud in the form of forgery do not provide any basis for relief under Rule 60, nor do they create a genuine issue of material fact precluding summary judgment in favor of FirstBank.

---

[12] During this time, the parties engaged in additional discovery (*Christopher I*, Dkt. Nos. 42, 47, 52); the parties were ordered to participate in mediation (*Christopher I*, Dkt. No. 39, 67); and Plaintiffs' request for extension of time to respond to FirstBank's summary judgment motion was granted. (*Christopher I*, Dkt. Nos. 48, 50). Several months thereafter, the Court issued an Order giving Plaintiffs another opportunity to respond to FirstBank's Motion. (*Christopher I*, Dkt. Nos. 68). Plaintiffs did not file a response to the motion or request another extension of time until after the Motion was granted. (*Christopher I*, Dkt. Nos. 89, 94, 111).

[13] It was only after the Court granted summary judgment to FirstBank in *Christopher I* that the current Plaintiffs attempted to amend their answer to deny allegations made by FirstBank. (*Christopher I*, Dkt. No. 106). Even in this much belated document, no claim of forgery was asserted.

In the Amended Complaint and their Motion for Relief from Judgment, Plaintiffs also make unspecific claims of fraud beyond the use of forged documents. Plaintiffs appear to assert that FirstBank falsely represented that it was the holder of the Notes underlying the Mortgage in *Christopher I*, thereby defrauding both the current Plaintiffs and the Court. (Dkt. Nos. 90-1 at §§ 3, 6). As discussed above, Plaintiffs have failed to plead any particular facts or present any evidence to undermine FirstBank's averment and evidence that it is the holder of the Note in dispute.

As for Plaintiffs' claims that FirstBank committed fraud "on the court," the Third Circuit has set forth a "demanding standard of proof [ ] to demonstrate fraud upon the court including (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court." *Gillespie v. Janey*, 527 F. App'x 120, 122 (3d Cir. 2013) (citing *Herring v. United States*, 424 F.3d 384, 386 (3d Cir. 2005)). As noted above, however, FirstBank presented sufficient evidence during *Christopher I* that it acquired Plaintiffs' 2006 Note when it merged with VICB and possessed the subsequent modified Notes executed in 2008 and 2012. FirstBank presented undisputed evidence that Plaintiffs failed to comply with the terms of the Modified Note and Mortgage, and Plaintiffs never disputed that they failed to make the required payments.

More significantly, Plaintiffs failed to bring forward in this case any *evidence* to show that FirstBank's declaration that it was holder of the notes was false. FirstBank—in both *Christopher I* and the present case—has presented copies of the various Notes and Mortgages, none of which contain assignments showing a transfer to any third-party. Plaintiffs have failed to present any evidence undermining FirstBank's assertion of its status as holder of the Notes. Absent evidence of fraud, Plaintiffs cannot relitigate the standing issue resolved in *Christopher I.*

In summary, Plaintiffs' submissions have failed to establish a factual basis entitling them to a trial on their claims of fraud. Plaintiffs have failed to identify any alleged forged instruments submitted by FirstBank, nor have their bald assertions established the elements for a fraud claim on their own behalf. Further, nothing in the record supports any basis to challenge the Judgment in *Christopher I* under Rule 60(b) based upon fraud on the Court. Without any evidence to support their cursory and conclusory allegations, FirstBank is entitled to summary judgment on Plaintiffs' claims of forgery and fraud. For the same reasons, Plaintiffs' Motions for Relief from Judgment on those bases (Dkt. No. 117) will be denied.

### 2. RESPA Claims

In their Amended Complaint, Plaintiffs claim that FirstBank violated the provisions of RESPA by failing to adequately respond to their Qualified Written Request for information about their loan. (Dkt. No. 90-1 at 2-3). FirstBank's Motion for Summary Judgment asserts that Plaintiffs have failed to present evidence supporting two of the elements of a claim under RESPA. (Dkt. No. 105-2 at 2-3).

RESPA's principal purpose is "to protect home buyers from material nondisclosures in settlement statements and abusive practices in the settlement process." *Bordoni v. Chase Home Finance LLC*, 2019 WL 1559142, at *2 (E.D. Pa. April 10, 2019) (citation omitted). RESPA protections are provided for both the settlement process and in "servicing" a federally-related mortgage loan. Obligations by loan servicers are triggered if a borrower submits to the servicer a "Qualified Written Request" ("QWR"). A borrower's QWR must provide specific information about the borrower and (1) state the reasons the borrower believes the account is in error; or (2) provide sufficient detail about the "information relating to the servicing of the mortgage loan sought by the borrower." 12 C.F.R. § 1024.31.

For Plaintiffs to establish their RESPA claim, they must show: "(1) the submission of a [QWR] by a borrower to a loan servicer for information *relating to the servicing* of the loan, (2) a failure by the loan servicer to timely respond, and (3) damages." *Rhodes v. Matrix Servicing, LLC*, 302 F. Supp. 3d 656, 662 (D.N.J. 2018) (emphasis added). In its Motion for Summary Judgment, FirstBank asserts that Plaintiffs cannot establish the second and third elements. (Dkt. No. 105-1 at 3-5). Plaintiffs maintain, however, that (1) Attorney Cole's Declaration supporting the Statement of Uncontested Facts cannot be considered;[14] and (2) FirstBank defaulted under RESPA, thereby acquiescing to a consent judgment against it. (Dkt. No. 122 at 3-8).

FirstBank concedes, for purposes of summary judgment, that Plaintiffs' letter dated December 13, 2013—at least in part—is a valid QWR under 12 U.S.C. § 2605(e)(1)(B).[15] *See Herrera v. Central Loan Admin. & Reporting*, 2017 WL 4548268, at * 2 (D.N.J., Oct. 12, 2017) (letter stating account contained errors and requesting documents and information regarding the loan servicing sufficient to be a QWR). The record shows that Plaintiffs' QWR, in part, complained

---

[14] Plaintiffs rely on Rule 3.7 of the ABA's Model Rules of Professional Conduct which prohibits an attorney from representing a client at trial when the attorney is likely to be a necessary witness at trial. Plaintiffs provide no analysis, however, showing that Rule 3.7 applies under the present circumstances. That Rule refers to *representation at trial*, not during other stages of the litigation. *Cubica Group, LLLP v. Mapfre Puerto Rican American Ins. Co.*, 2012 WL 5331257, at *5 (D.V.I. Oct. 29, 2012).

[15] Plaintiffs specifically requested "clarification of the various activities, sale, transfer, funding source, legal and beneficial ownership, *charges, credits, debits, transactions, reversals, actions, payments,* analyses and records related to the service of [their] loan accounts from origination to the present date," as well as other information. (Dkt. No. 1-5 at 2) (emphasis added). At least some of this information relates to servicing of the loan. However, some of the information requested did not constitute a valid QWR under RESPA. *Cole v. Wells Fargo Bank, N.A.*, 790 F. App'x 460, 465 (3d Cir. 2019); *see also Dietz v. Beneficial Loan & Thrift Co*., 2011 WL 2412738, at *4 (D. Minn. June 10, 2011) (information about loan's closing and origination, loan ownership and the source of funds used by mortgagee to purchase promissory note did not relate to "loan servicing.")

about the accounting and servicing of the loans and requested information about those matters. (Dkt. No. 1-5 at 2).

FirstBank's Declaration in support of its summary judgment motion states that FirstBank complied with Plaintiffs' RESPA request by serving supplemental Rule 26(a) disclosures, including various loan documents, and that those disclosures addressed all the "legitimate and coherent demands for information." (Dkt. No. 105-2 at 2). This assertion alone, however, does not entitle FirstBank to judgment as a matter of law on this element of the claim.

RESPA requires that a loan servicer provide a *written notice* of any corrections, or a *written explanation* of the reasons the servicer believes the account is correct, or a *written explanation* or clarification that the requested information is unavailable and why the information is not available. 12 U.S.C. § 2605(e)(2). Simply providing documents without a "written explanation" does not comply with RESPA statutes if—as here—information regarding payments and credits is requested. *See, e.g., Schmidt v. Wells Fargo Bank, N.A.*, 2019 WL 4943756, at *3 (D.N.J. Oct. 8, 2019) (QWR questioning whether payments were properly credited required a response addressing the calculations); *In re Payne*, 387 B.R. 614, 637-638 (D. Kan. Bankr. 2008) (QWR seeking information about escrow deficiency required mortgagee to provide narrative description of calculations; an unexplained payoff letter is insufficient). Because FirstBank's Motion does not clearly identify the documents it provided to Plaintiffs beyond the "loan file" and supplemental Rule 26(a) disclosures, the Court is unable to confirm that FirstBank provided a sufficient written explanation in response to the QWR. Accordingly, FirstBank has not shown full statutory compliance as a matter of law.

The Court will, therefore, focus on the third element:  whether Plaintiffs have established any damages as a result of the alleged RESPA violation. Mere procedural violations of 12 U.S.C.

§ 2605 do not support an award of damages; instead, the plaintiff must establish an actual injury from the violation. *See Cole v. Wells Fargo Bank, N.A.*, 790 F. App'x 460, 465 (3d Cir. 2019) (actual injury required to support RESPA claim); *Vilkofsky v. Specialized Loan Servicing, LLC*, 2017 WL 2573874, at *3 (W.D. Pa., June 14, 2017) (actual damages under RESPA must result from a failure to comply with the statute). The causation element requires a plaintiff to present evidence that damages were incurred as a result of an inadequate RESPA response as opposed to other wrongdoing. *Heyman v. CitiMortgage, Inc.*, 2019 WL 2642655, at *37 (D.N.J. June 27, 2019) (finding plaintiff failed to establish any damages traced to inadequate RESPA response).

Plaintiffs have failed to allege any actual injury caused by FirstBank's alleged violation. There are no declarations claiming that Plaintiffs were assessed an inaccurate amount in the deficiency judgment. (*Christopher I*, Dkt. Nos. 163, 175). Nor have Plaintiffs claimed that FirstBank's alleged RESPA violation caused any other damages to them distinct from the foreclosure proceeding itself. The Court is unable to ascertain any legitimate claim for damages from Plaintiffs' submissions. *See Diedrich*, 839 F.3d at 591-93 (RESPA requires evidence of actual injury, *i.e.*, such as paying a higher interest rate because of damage caused to borrower's credit rating as a result of the RESPA violation).

Instead of explaining the damages caused by any RESPA violation, Plaintiffs rely on their claim of a "consent judgment" arising as a result of their *self-created* penalties set out in their QWR letter and their "notice of noncompliance." Plaintiffs maintain that a judgment against FirstBank was created when FirstBank failed to fully comply with RESPA and remained silent after receiving Plaintiffs' "Notice of Noncompliance." (Dkt. Nos. 1-2 at 2-7; 64 at 12; 90-1 at 3). Plaintiffs assert that because their QWR contained "default" provisions, FirstBank thereby agreed or acquiesced to a consent or default judgment for Plaintiffs. According to Plaintiffs, this consent

or default judgment granted them an Irrevocable Power of Attorney over FirstBank's assets. (Dkt. Nos. 1-2 at 6-7; 90-1 at 3-4). There simply is no legal authority for Plaintiffs' position.[16]

Accordingly, the Court rejects all arguments that Plaintiffs obtained a default or consent judgment against FirstBank based upon any alleged violation of RESPA. Moreover, because Plaintiffs have made no effort to plead or prove any legitimate form of damages caused by FirstBank's alleged RESPA violations, FirstBank's Motion for Summary Judgment on Plaintiffs' RESPA claim will be granted.

### 3. Rescission

In opposing FirstBank's Summary Judgment Motion, Plaintiffs also contend that the various Promissory Notes were invalid because they were "adhesion" contracts in which they had no power to negotiate terms.[17] Even if Plaintiffs lacked bargaining power, however, this alone does not make the Notes unenforceable. Plaintiffs fail to point to any provisions in the loans that they consider unconscionable. While Plaintiffs focus on their lack of bargaining power, a contract cannot be deemed unconscionable "simply because of a disparity in bargaining power." *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 235 (3d Cir. 2012) (applying Pennsylvania law); *Alexander v. Anthony Inter., L.P.*, 341 F.3d 256, 266-67 (3d Cir. 2003) (applying Virgin

---

[16] Contrary to Plaintiffs' self-created penalties, if a RESPA violation has been established—which includes a showing of damages, which Plaintiffs have failed to show—the statute contains penalties within its own provisions. 12 U.S.C. § 2605(f). Loan servicers who fail to comply with RESPA will be liable to individuals for violations based on the "actual damages" to the borrower caused by the violation and "any additional damages . . . in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.00." *Id.*

[17] A contract of adhesion is defined as one "presented on a take-it or leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate." *Stelluti v. Casapenn Enters., LLC*, 1 A.3d 678, 687 (N.J. 2010) (quotations omitted). Although a contract of adhesion may require a party to accept the contract as is, "the agreement may nevertheless be enforced." *Id. See also Wells Fargo Bank, N.A. v. CCC Atlantic, LLC*, 2013 WL 12147688 (D.N.J. Aug. 14, 2013).

Island law). Instead, the record shows that despite the parties' restructuring of the loans, Plaintiffs failed to make all the payments due under the Note and Mortgage.[18]

Virgin Islands law recognizes rescission as an alternative contract remedy to a claim for money damages when a contracting party establishes that the contract was the result of fraud in the inducement. *See Wilkinson v. Wilkinson*, 70 V.I. 901, 908 (2019) (discussing contract rescission as a remedy when the contract was executed as a result of fraudulent or material misrepresentations). As discussed above, however, Plaintiffs have failed to allege any legitimate claim of fraud. Moreover, rescission involves the "'unwinding of a contract,' with the goal of returning the parties to their positions prior to contracting." *V.I. Port Authority v. Callwood*, 2014 WL 905816, at *6 (V.I. Super. Feb. 20, 2014) (citing *Jones v. InfoCure Corp.*, 310 F.3d 529, 535 (7th Cir. 2002)). Plaintiffs have not established that the parties can be returned to the same positions as existed prior to the execution of the Notes.

In the absence of any legitimate claim of fraud underlying Plaintiffs' request to rescind their Note and Mortgage with FirstBank and the lack of any evidence that the transaction can be unwound, Plaintiffs' reliance on the doctrine of rescission is insufficient to either create a genuine issue of fact sufficient to avoid summary judgment, or to obtain relief under Rule 60. Accordingly, Plaintiffs' rescission argument is rejected, and FirstBank's Motion for Summary Judgment will be granted as it relates to this claim.

---

[18] Despite Plaintiffs' claims of lack of bargaining power, the Mortgage on the Whim Estates property was refinanced three times after the 2000 original purchase-money mortgage Plaintiffs obtained from VICB. VICB refinanced the loan in 2006 after Plaintiffs went into default. (*Christopher 1*, Dkt. Nos. 111-6, at 2-3; 111-7). After FirstBank took over VICB's assets, FirstBank issued a Substitute Note in 2009 and the final Modification Note in August 2012. (*Christopher 1*, Dkt. Nos. 1-4; 1-6).

### 4. Defamation/Libel Claims

Shortly before the Court granted judgment to FirstBank in *Christopher I*, Plaintiffs began filing their first *pro se* motions and asserting sovereign rights as "Natural Beings." (*Christopher I*, Dkt. No. 66). Then, Herishetapaheru filed a Motion to Dismiss FirstBank's Complaint with prejudice, based upon new assertions that: Herishetapaheru had legally changed his name; he was never served process bearing his (new) legal name; and that as a result, the Court lacked personal jurisdiction over him. (*Christopher I*, Dkt. No. 70 at 3-7).

In addressing Plaintiffs' new claims, FirstBank filed a response asserting:

> "Defendants' Motion to Dismiss is, as the two previous filings, difficult to decipher. However, all resemble the sorts of court filings that have recently arisen in both state and federal courts under a loosely categorized "Sovereign Citizens" movement. . . . Plaintiff respectfully suggests that this aspect of the motion should simply be disregarded . . . ."

(*Christopher I*, Dkt. No. 71 at 4).[19] Further, early in *Christopher I*, FirstBank referenced "threatening" behavior by Herishetapaheru—reported by the process server—allegedly arising from events occurring when the process server attempted to serve process on Plaintiffs. (Dkt. No. 115-1 at 37).[20] Plaintiffs argue that FirstBank's actions in comparing them with the "Sovereign Citizens movement" and accusing Herishetapaheru of "threatening behavior" constitute libel. *Id.* at 40.

---

[19] FirstBank's Response also included a copy of an article from the Journal of the American Bar Association entitled "'Sovereign Citizens' Plaster Courts With Bogus Legal Filings And Some Turn To Violence." (*Christopher I*, Dkt. No. 71-1).

[20] The process server in *Christopher I* filed an affidavit describing Herishetapaheru's alleged refusal to arrange a time for process to be served and then posting "Beware of Dog" and "Do Not Enter" signs on the Whim Estates property making it difficult to make service at the residence. In addition, when the process server delivered the summons to Dr. Kahina at her place of employment, he asserted that Herishetapaheru made threatening phone calls and sent a threatening text message to him. (*Christopher I*, Dkt. 8-1). FirstBank used this affidavit to obtain an Order from the Magistrate Judge permitting service to be made on Herishetapaheru by publication.

Under Virgin Islands law, to prevail on a defamation claim a plaintiff must prove (1) the existence of "a false and defamatory statement concerning another;" (2) the existence of "an unprivileged publication [of the false and defamatory statement] to a third party;" (3) "fault amounting to at least negligence on the part of the publisher;" and (4) "either the actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Policeman's Benevolent Ass'n v. Richards*, 2017 WL 476898, at *2 (V.I. Super. 2017); *see also Kendall v. Daily News Pub. Co*., 55 V.I. 781, 787 (2011) (accepting the Restatement's elements for defamation claims); RESTATEMENT (SECOND) OF TORTS § 558.

In responding to Plaintiffs' assertions of defamation, FirstBank contends that, assuming the statements at issue were defamatory, the statements were made by it—through its attorneys— in filings during *Christopher I* and are protected by the absolute "litigation privilege." Because of this absolute privilege, FirstBank argues that it is entitled to summary judgment on Plaintiffs' claims for monetary damages for the alleged defamation. (Dkt. No. 105-1 at 10-12).

An absolute privilege is one type of privilege defense available in response to defamation claims. *See* RESTATEMENT (SECOND) OF TORTS §§ 583-598. This category of privilege, which is generally limited to legislative, judicial, or quasi-judicial proceedings, affords a complete defense to claims of defamation. *See Espersen v. Sugar Bay Club & Resort Corp*., 2018 WL 6177341, at *4 (V.I. Super. Nov. 21, 2018) (discussing absolute and conditional privileges for claims of defamation) (citing Restatement (Second) of Torts §§ 585-592A (1979)). The absolute privilege defense is recognized by Virgin Islands law in appropriate circumstances. *See, e.g., Mills-Williams v. Mapp*, 67 V.I. 574, 595 n.11 (2017) (Governor had absolute privilege defense for defamation claims based on statements made in conjunction with his official duties); *Guardian Ins. Co. v.*

*Estate of Knight-David*, 2017 WL 2814039, at * 2 (V.I. Super. April 7, 2017) (absolute immunity applied to allegations in a civil complaint filed with the court).

There are two categories of absolute "litigation" privilege. One type of privilege applies to attorneys. The Restatement declares that an attorney "is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, *if it has some relation to the proceeding*." (emphasis added). RESTATEMENT (SECOND) OF TORTS § 586 (1977). The second category extends an absolute privilege to parties in private litigation to the same extent as the privilege provided for attorneys. RESTATEMENT (SECOND) OF TORTS § 587 (1977).

The litigation privilege may be applied to "communications (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objectives of the litigation; and (4) that have some connection or logical relation to the action." *See JNL Management, LLC v. Hackensack Univ. Medical Center*, 2019 WL 1951123, at *9 (D.N.J. May 2, 2019) (statements made during contract negotiations were not made in contemplation of litigation to warrant the litigation privilege).

The alleged defamatory comments mentioned by Plaintiffs in their submissions are contained in FirstBank's written court filings in *Christopher I*. The first statement Herishetapaheru challenges relates directly to FirstBank's motion to make service by publication and the reasons supporting that request. The second statement was made in direct response to submissions filed by the current Plaintiffs in *Christopher I*. (*Christopher I*, Dkt. No. 70). In its response, FirstBank noted that Plaintiffs' submissions "resemble" judicial submissions made in American courts under a "loosely categorized 'Sovereign Citizens' movement." (*Christopher I*, Dkt. No. 71).

Based upon the circumstances surrounding the statements, it is clear that both statements were made during the judicial proceeding and pertain directly to FirstBank's and Plaintiffs' claims and the process of pursuing those claims. Thus, the statements are absolutely privileged and cannot serve as a basis for a claim of defamation. For these reasons, FirstBank is entitled to summary judgment on Plaintiffs' defamation/libel claims.[21]

### C.      Plaintiffs' Rule 60(b) Motion

To succeed on their Motions for Relief from Judgment in *Christopher I* due to fraud (Dkt. Nos. 115 and 117), Plaintiffs are required to establish *by clear and convincing evidence* that FirstBank committed fraud in representing to the Court that it was the holder of the Note and/or relied on forged instruments in the prior proceeding. *Jayasundera v. Macy's Inc*., 731 F. App'x at 136. As discussed above, Plaintiffs fail to cite any substantive evidence to establish that FirstBank misrepresented its status as the holder of Plaintiffs' Note and Mortgage in *Christopher I*.

Plaintiffs present two additional pieces of information—neither of which alters that Court's conclusion. First, Plaintiffs proffer their "research" showing that FirstBank's parent corporation, First Bancorp, was involved in the Secondary Mortgage sale business and sold "Mortgage Back Securities." (Dkt. No. 119 at ¶ 19). Plaintiffs do not explain how this is associated with any alleged misrepresentation in the foreclosure matter and the Court cannot discern any such connection.

Plaintiffs also present a Consent Judgment that was issued by the federal court in the Southern District of New York in 2007 in an action brought by the Securities and Exchange

---

[21] In view of the Court's rulings herein on the merits of each of Plaintiffs' claims, the Court need not address FirstBank's res judicata/collateral estoppel arguments.

Commission ("SEC"). In that case the SEC alleged that First Bancorp failed to adequately disclose its finances *to its shareholders*. *Id.* at ¶ 19; 119-5.[22] While the Consent Judgment reflects that the SEC claimed that First Bancorp violated federal securities laws by making misrepresentations to actual and potential shareholders, it provides no evidence relevant to Plaintiffs' Notes or Mortgages with FirstBank. *See Conway v. U.S. Bank, N.A.*, 2018 WL 6417346 at *2-3 (E.D. Pa. Dec. 6, 2018) (rejecting debtor's attempt to use prior consent judgment entered between regulatory agency and creditor as any basis to support claims that prior foreclosure action was invalid). Alleged misrepresentations to shareholders by FirstBank's parent corporation between 2004 and 2006 are not sufficient to controvert FirstBank's assertions that it acquired Plaintiffs' Note from VICB in 2008.

Based on the foregoing, the Court finds that Plaintiffs have failed to present any evidence—let alone clear and convincing evidence—of fraud so as to obtain relief from the judgment entered in *Christopher I* under Fed. R. Civ. P. 60(b)(3) or 60(d). Accordingly, Plaintiffs' Motions for Relief from Judgment for Fraud on the Court will be denied.

### D.     Plaintiffs' Motion to File Second Amended Complaint

As they did when FirstBank filed its summary judgment motion in response to their original Complaint, Plaintiffs seek to amend their Amended Complaint in response to FirstBank's summary judgment motion directed at the Amended Complaint. (Dkt. No. 114).

---

[22] The New York Consent Judgment enjoins First Bancorp and its agents from violating various provisions of the Securities and Exchange Act of 1934 and related regulations designed to protect investors from fraud. First Bancorp was ordered to disgorge $1 "representing profits gained as a result of the conduct alleged" and to pay a civil penalty of $8.5 million. (Dkt. No. 119-5). The Complaint arose out of First Bancorp's *purchase* of non-conforming mortgages. This occurred before First Bancorp and FirstBank acquired VICB. *Id.*

In order for Plaintiffs to obtain leave to amend their Amended Complaint, they must show that their amendment comports with the standards of Rule 15(a) of the Federal Rules of Civil Procedure. The Rule permits a party to amend its pleading only with the opposing party's written consent or with leave of the court. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2) (emphasis added). However, a motion to amend under Rule 15 may be denied when "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014) (quotations omitted).

The Court has reviewed Plaintiffs' Proposed Second Amended Complaint (Dkt. No. 114-2), applying the liberal standards discussed under both Rules 12 and 15 to Plaintiffs' *pro se* pleadings. Although the proposed Second Amended Complaint sets aside much of Plaintiffs' recitation of historical events and reduces its reliance on a superfluity of claims relating to Plaintiffs' sovereignty, royal status, and religious rights, the proposed Second Amended Complaint nonetheless reiterates the same underlying arguments and theories as the first Amended Complaint.

Because Plaintiffs' proposed Second Amended Complaint only restates the same issues rejected on the merits in the discussion above, the proposed amendment is futile. *See Fake v. Pennsylvania*, 753 F. App'x 118, 120 (3d Cir 2019) (when an amended complaint raises many of the same, previously litigated, flawed legal arguments, a district court's refusal to permit any further amendments is not an abuse of discretion). Consequently, Plaintiffs' Motion for Proposed Second Amended Mixed Actions Claims and Complaint in Equity and Common Law" (Dkt. No. 114) will be denied.

### E.        Plaintiffs' Motion to Disqualify Counsel

Plaintiffs have also filed a Motion to Disqualify FirstBank's counsel of record. (Dkt. No. 126). In support of their Motion, Plaintiffs rely on Attorney Cole's Declaration (Dkt. No. 105-3) filed in support of FirstBank's Motion for Summary Judgment. (Dkt. No. 126-1 at 2-24). Plaintiffs argue that FirstBank's attorneys are two witnesses in their case because the attorneys drafted the pleadings in the foreclosure action. Plaintiffs also assert that counsel have abused their position by submitting forged documents, making inaccurate statements of fact and law, and presenting false allegations against Plaintiffs. (Dkt. No. 127 at 20-33). Plaintiffs assert that the attorneys' actions violate their duties under the Constitution, the ABA Model Rules of Professional Conduct and as officers of the Court. *Id.* at 7-14.

The Supreme Court of the Virgin Islands has adopted rules comparable to the ABA Model Rules of Professional Conduct ("MRPC"). *See V.I. Sup. Ct. R.* 211 *et seq.* (2020 Ed.) In this case, Plaintiffs' first argument presumably relies on MRPC 3.7.[23] That Rule states:

> "(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be *a necessary witness* unless:
>         (1) the testimony relates to an uncontested issue;
>         (2) the testimony relates to the nature and value of legal services rendered in the case; or
>         (3) disqualification of the lawyer would work substantial hardship on the client."

MODEL RULES OF PROF'L CONDUCT R. 3.7 (emphasis added).

When a party seeks to disqualify opposing counsel, that party carries a "heavy burden and must meet a high standard of proof before a lawyer is disqualified." *Farrell v. Hess Oil Virgin*

---

[23] FirstBank's response cites the ethical rules adopted by the Virgin Islands Supreme Court. (Dkt. No. 128 at 2). Attorneys practicing in District Court are bound by the American Bar Association's Model Rules of Professional Conduct ("MRPC"). LRCi 83.2(a)(1). In any event, MRPC 3.7 and V.I. Sup. Ct. R. 211.3.7 are identical.

*Islands*, 57 V.I. 50, 57 (V.I. Super. 2012) (citing *Prosser v. Nat'l Rural Utility Cooperative Fin. Corp.*, 2009 WL 1605637, at *2 (D.V.I. June 8, 2009)). "Motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *Thomas v. Kragel*, 2018 WL 2081915, at *2 (V.I. Super. May 1, 2018).

In seeking disqualification of FirstBank's counsel under MRPC 3.7, Plaintiffs rely heavily on Attorney Cole's submission of a Declaration accompanying FirstBank's summary judgment motion. Plaintiffs assert that Attorney Cole "appears to be the only advocate witness in a Motion for Summary Judgment." (Dkt. No. 126 at 2-3). In his Declaration, Attorney Cole makes general averments about events in *Christopher I*:  the filing of the Complaint; FirstBank's service on the current Plaintiffs' attorney[24] of Rule 26(c) disclosures which identified persons with knowledge about the loans and FirstBank's foreclosure claims; the receipt by Attorney Cole's law firm of a "RESPA letter" in March 2014 from the current Plaintiffs; FirstBank's filing of a Supplemental Rule 26(c) disclosure identifying and providing documents showing FirstBank's ownership of the loan at issue; this Court's entry of summary judgment in *Christopher I*; and another *Christopher I* Order denying various motions filed by the current Plaintiffs. (Dkt. No. 24-3).

For Rule 3.7 to apply, the party seeking disqualification must first establish that the attorney is a "necessary witness." Under Virgin Islands law, this has been defined as an individual whose possible testimony is found to be "relevant, material, and *unobtainable elsewhere*." *Daily News Publishing Co v. 29th Legislature of the Virgin Islands*, 59 V.I. 138, 145 (2012) (emphasis added). If it is likely that the testimony can be obtained through other means, then the attorney is

---

[24] The current Plaintiffs were initially represented by counsel in *Christopher I*, for the first approximately 4 months of the foreclosure action. (*Christopher I*, Dkt. No. 26). Thereafter, the current Plaintiffs continued *pro se*.

not a "necessary witness" and Rule 3.7 does not apply. *Id.* at 145-46; *see also Dantinne v. Brown,* 2017 WL 2766167, at *4 (D.N.J. June 23, 2017) (an attorney is a necessary witness where the information provided cannot be obtained through any other means, including through alternative witnesses). Further, if it is unclear from the record as to whether or not the attorney's testimony is necessary, the motion should be denied. *Ramos v. Cowan Systems, LLC*, 2015 WL 8664279, at *3 (D.N.J. Dec. 11, 2015).

FirstBank opposes the Motion to Disqualify asserting that Attorney Cole's Declaration simply recites undisputed facts concerning the series of events surrounding FirstBank's court filings in *Christopher I* and the notices that the current Plaintiffs directed to FirstBank through counsel. FirstBank further argues that it has never represented that Attorney Cole or Attorney Catera would be called as witnesses for FirstBank if this case proceeded to trial, nor would counsel's testimony be required at any trial to present FirstBank's defenses to Plaintiffs' claims. *Id.* at 2.

While Attorney Cole's Declaration is made on his personal knowledge, it does not reflect that he is the only witness with knowledge of the information contained in his Declaration. (Dkt. No. 24-3). As such, Attorney Cole is not a "necessary witness" under MRPC 3.7. *Daily News Publishing Co.*, 59 V.I. at 145; *see also Thomas v. Kragel,* 2018 WL 2081915, *3 (D.V.I. May 1, 2018) (counsel's knowledge of information available from other sources is not grounds for disqualification of counsel). Moreover, in addition to the seemingly undisputed nature of the matters asserted in Attorney Cole's Declaration, the Court's determination that FirstBank's Motion for Summary Judgment will be granted renders any trial—to which Rule 3.7 is directed—unnecessary.

Plaintiffs also claim that both of FirstBank's attorneys should be disqualified because of their alleged ethical violations in this case and in *Christopher I.* (Dkt. No. 127 at 2, 7-10). Under Virgin Islands law, resolving a motion to disqualify due to alleged ethical violations involves a two-step inquiry. *Fenster v. Dechabert*, 2017 WL 4969896, *6 (V.I. Super. Sept. 27, 2017). First, the Court must determine whether the record sufficiently supports or raises strong suspicion of an ethical violation. If that occurs, the Court must then engage in a balancing test to determine whether disqualification is an appropriate remedy. *Id; see also Thomas v. Duvall*, 2020 WL 6747436, at *2 (M.D. Pa. Nov. 17, 2020) ("a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers" in enforcing attorney ethical standards); *Crown Bay Marina, L.P. v. Reef Transportation, LLC*, 2020 WL 6165745, *4 (D.V.I. Oct. 21, 2020) (the court should disqualify counsel "only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule") (citations omitted).

The Court finds that Plaintiffs' allegations of use of forged documents, inaccurate statements and false allegations by FirstBank's counsel are as vague and unsupported as their claims of fraud by FirstBank, which the Court rejected above. Consequently, these allegations are inadequate to establish a factual basis for any violation of the MRPC that would warrant the Court's use of its inherent power to disqualify counsel. Accordingly, Plaintiff's Motion to Disqualify Defendant Attorneys as Sole Advocate-Witness will be denied.

## IV.    CONCLUSION

Notwithstanding Plaintiffs' strongly held beliefs and assertions, they simply have failed to present any *evidence* to withstand FirstBank's Motion for Summary Judgment on the First

Amended Complaint. Plaintiffs' multitude of arguments do not entitle them to relief either in the form of damages against FirstBank or in the setting aside of the Judgment in *Christopher I*.

Accordingly, FirstBank's Motion for Summary Judgment will be granted; Plaintiffs' Motion to File a Second Amended Complaint will be denied as futile; Plaintiffs' Motions for Relief from Judgment will be denied; and Plaintiffs' Motion to Disqualify Defendant's Attorneys will be denied. In the absence of any factual and/or legal basis for Plaintiffs' claims, this action will be dismissed with prejudice.

An appropriate Order accompanies this Memorandum Opinion.

Date:  December 7, 2020

_____/s/_____
WILMA A. LEWIS
Chief Judge